# UNITED STATES DISTRICT COURT
for the
_____ District of _____

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.   **23-mj-00702**
)
)
)

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the _____  District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
  ❐ evidence of a crime;
  ❐ contraband, fruits of crime, or other items illegally possessed;
  ❐ property designed for use, intended for use, or used in committing a crime;
  ❐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

  *Code Section*                                              *Offense Description*

The application is based on these facts:

  ❐ Continued on the attached sheet.
  ❐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
     18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ John C Costello*
*Applicant's signature*

_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ *(specify reliable electronic means)*.

Date: _____

*Judge's signature*
KAREN S. CRAWFORD

City and state: _____

*Printed name and title*

# ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched:

Silver Samsung Galaxy cellphone
IMEI: 354142110702588
**(Target Device 2)**

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

# ATTACHMENT B-2

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below.  The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **November 25, 2021, through February 20, 2023**:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above, which are evidence of violations of Title 8, United States Code, Section 1324.

# AFFIDAVIT

I, John E. Costello, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

    1) Red iPhone cellphone seized under Riverside Sheriff's Department Case Number L223110083

    2) Silver Samsung Galaxy cellphone IMEI: 354142110702588

Hereinafter referred to as the **Target Devices** as further described in Attachments A-1 and A-2, and to seize as evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachments B-1 & B-2. The requested warrants are related to the investigation of Felipe De Jesus ROSALES-Herrera for alien smuggling and bringing in aliens for financial gain. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

2. The information contained in this affidavit is based upon my training and experience, personal observations, and information obtained from other agents and members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## TRAINING AND EXPERIENCE

3. I have been employed as a United States Border Patrol ("USBP") agent ("BPA") since April 2006. I am currently assigned to the San Diego Sector Intelligence Unit ("SDC SIU"). I am a graduate of the United States Border Patrol Academy at the

1

Federal Law Enforcement Training Center ("FLETC") in Artesia, New Mexico. The Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), criminal law, and statutory authority, as well as cross-training in Title 21 of the United States Code (Controlled Substance Act (CSA) violations) and Title 19 of the United States Code (customs law violations). I have been trained in investigating various violations of federal law, including alien smuggling, narcotics smuggling, weapons smuggling, and bulk currency smuggling. I have also worked with and learned from other agents and criminal investigators with extensive experience in these investigations. Prior to my position as Border Patrol Agent – Intelligence, I was assigned as a task force officer to the San Diego Border Enforcement and Security Task Force (BEST) with Homeland Security Investigations (HSI). I was also assigned to the Campo Border Patrol Station where I worked in uniformed and plain clothes assignments.

4. As a BPA, I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, and thereby authorized to request issuance of federal search and seizure warrants. As an Agent with the Border Patrol, my responsibilities include the investigation of possible violations of Immigration and Nationality laws (Title 8, United States Code), including alien smuggling in violation of Title 8, United States Code, Section 1324, and related offenses.

5. Through investigations, training, law enforcement intelligence sources, and conversations with senior agents and task force officers/agents, I have become familiar with the operations of both large and small alien and/or drug smuggling organizations (ASOs/DTOs) operating within the United States and internationally.

6. I have arrested and interviewed numerous alien smugglers. Through these experiences, I have become familiar with the activities of those who coordinate smuggling events and the practices employed by the drivers/smugglers locally and abroad, including

recruitment methods, transportation methods and tactics used to communicate with the drivers and avoid detection by law enforcement.

7.  Through my training and experience, I have gained a working knowledge of and insights into the workings of criminal organizations. I have also gained extensive information as to the operation habits of persons who make their living as alien and narcotics smugglers. I have become familiar with the behavior, speech, routes and method of operation utilized by criminal organizations to avoid detection and apprehension by law enforcement officers.

8.  The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States.  These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.  It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9.  Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions

set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10.   This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

11. Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that violations of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (v)(I) exist. There is also probable cause to search the information described in Attachments A-1 and A-2 for evidence of these crimes, as described in Attachments B-1 and B-2.

## FACTS SUPPORTING PROBABLE CAUSE

12. On November 8th, 2022, Riverside Sheriffs conducted a traffic stop on Felipe De Jesus ROSALES-Herrera. ROSALES was the lone occupant in the vehicle. After a brief investigation ROSALES was arrested by the Riverside Sheriff's department for kidnapping, possession of narcotics, carrying a loaded firearm and domestic violence. During a search of the truck ROSALES was driving, Sheriffs seized two cellular phones, the **Target Devices**, from ROSALES. The charges against ROSALES are pending in the state court system. On January 31st, 2023, Border Patrol Agent-Intelligence (BPA-I) J. Costello took custody of the **Target Devices** to file for search warrants to obtain the evidence described in Attachments B-1 and B-2.

13. Felipe De Jesus ROSALES-Herrera has been identified as an undocumented alien that coordinates the smuggling of other undocumented aliens and is the head of his own criminal organization using the Southern District of San Diego, California as his primary smuggling corridor. Investigating agents initially became aware of ROSALES' activities when they arrested a subject named Jose Luis ALEJO-Cruz and discovered ALEJO to have been coordinating numerous smuggling events within and outside the Brown Field Border Patrol's Area of Responsibility (AOR). Further research into ALEJO's activities revealed ALEJO to be working with and for ROSALES. The investigation then shifted the focus to ROSALES and his coconspirators as well as his criminal tactics. Over the course of the investigation into ROSALES' criminal activities

agents have known ROSALES to use two primary monikers; Primo and Junior (Jr.) and four cellular numbers to conduct his criminal enterprise.

14. On December 25th, 2021, a driver smuggling undocumented aliens failed to yield to agents attempts at a traffic stop. The driver lost control of the vehicle and crashed resulting in the death of one undocumented alien and seriously injuring two others. The resulting analyses of the phones seized from the driver and undocumented aliens revealed ALEJO to have been one of the coordinators for this event. Also discovered in the phones were two numbers associated to Felipe De Jesus ROSALES-Herrera, personal telephone number (PTN) 7144925296 (hereinafter referred to as PTN 5296) and 9514981449 (hereinafter referred to as PTN 1449). PTN 5296 was discovered in phones of material witness/smuggled alien Luis Javier HERNANDEZ-Sacramento (later discovered to be a foot guide), coordinator Jose Luis ALEJO-Cruz, and the driver Kevin Antonio QUEVEDO-Moncada. Material witness/smuggled alien Luis Javier HERNANDEZ-Sacramento had PTNs 1449 and 5296 saved in his phone; material witness/smuggled alien Jose Gael GARCIA-Sanchez had PTN 1449 in his phone. In reviewing tolls, agents saw communications that day between PTNs 1449 and 5296.

15. On January 20, 2023, investigative efforts led to the identification of an alien smuggling event that occurred at 174 N. Feldner Road, Orange, California 92868. 174 Feldner Road is an address ROSALES has listed in the past as his personal residence. Surveillance efforts resulted in the identification of a suspected sponsor vehicle, a Ford Freestyle which arrived at the Feldner address. The driver of the Freestyle was observed paying ROSALES an unknown amount of money before taking one of the suspected illegal aliens with him and driving away.

16. Agents identified the sponsor. On January 24, 2023, the sponsor met with Agents in the parking lot of a Home Depot located at 3040 E. Slauson Ave, Huntington Park, California. Present with the sponsor was M.G., who was identified as the smuggled alien picked up by the sponsor from 174 N. Feldner Road on January 20, 2023.

17. The sponsor admitted to picking up M.G. and paying his smuggling fee at the Feldner address. GARCIA-Rosas allowed agents to see text messages between himself and another subject using PTN 5296. One message stated: "Hablame tengo su sobrino, 174 n feldner rd Orange," meaning "Call me, I have your nephew."

18. M.G. was shown a photographic array depicting six individuals, titled EXHIBIT 4 (A). GARCIA positively identified ROSALES as the caretaker/boss at the house. The sponsor failed to identify any subject in the lineups presented.

19. M.G. was shown a street view screen shot of 174 N. Feldner Rd. Orange, California. M.G, positively identified the screenshot as the home where he was dropped off and where ROSALES had met them. Specifically, M.G. pointed to the right rear of the screenshot and stated it was the back house.

20. Over the course of the investigation, agents have discovered approximately sixteen (16) smuggling events where PTN 5296 was discovered or cited as the coordinator or one of the coordinators. ROSALES has also been previously identified as the subject using PTN 5296 as well as using PTN 5296 to coordinate meeting the drivers under his employ to pay them and take custody of the undocumented aliens he helped smuggle into the United States. Furthermore, a Google search of PTN 5296 revealed it to be the primary business number for a trucking company called RJR Trucking. RJR is an acronym for ROSALES Jr. (Junior). Pictures of the company reveal ROSALES to be driving various trucks with the RJR Trucking logo on the doors. A warrant served on the Instagram account associated to ROSALES revealed PTN 5296 to be the cellular number associated to the account. An administrative subpoena request sent to AT&T revealed PTN 5296 to be subscribed to by a subject named Monserrath AGUILAR. AGUILAR is ROSALES' girlfriend/wife.

21. PTN 1449 has been discovered in the phone of admitted or identified foot guides. Foot guides are subjects employed by the smuggling organizations for the purpose of guiding the undocumented aliens through the mountainous terrain to a pre-determined

pick-up point in the United States. While analyzing PTN 1449, agents learned the foot guides found in possession of this phone number appear to be part of a family alien smuggling ring recruited out of Coscomatepec, Veracruz, Mexico. ROSALES is from a town close to Coscometepec in Veracruz, Mexico. Approximately 5 smuggling events have been discovered where PTN 1449 was found within the phones of identified foot guides having the contact names associated with it as "El Junior" and "Levanton". "Levanton" is Spanish slang for driver or pick up. "El Junior" is a known moniker used by ROSALES. An administrative subpoena request sent to T-Mobile revealed PTN 1449 to be subscribed to by a subject named Christapher JOVANI.

22.     The third number discovered to be utilized by ROSALES to conduct his criminal activities is 7252363739 (hereinafter referred to as PTN 3739). This cellular number has been discovered or cited in approximately 7 smuggling events. One such event took place on May 5th, 2022, when a subject named Tanya RAMIREZ was arrested in the Brown Field Border Patrol's area of responsibility attempting to smuggle two (2) undocumented aliens. During a post Miranda statement RAMIREZ offered access to her cellular phone. Discovered in the phone were conversations in the WhatsApp texting application between RAMIREZ and two other subjects coordinating her smuggling event. The subjects were ALEJO using a known moniker associated to him "El Matracas" and PTN 3739 (ROSALES) using the contact name "Jr". Within the text messages agents could see PTN 3739 sending RAMIREZ a picture of the area where she was expected to stop. The picture is of Otay Lakes Road facing westbound with a mile marker circled in red with PTN 3739 (JR/ROSALES) stating, "Stop exactly here". An administrative subpoena request sent to AT&T/Cricket revealed PTN 3739 to be subscribed to by a subject named Monserra AGUILAR. I believe this to be ROSALES' girlfriend/wife, Monserrath AGUILAR as the spelling is only two letters short of the full spelling of her name.

23.     The final number known to be used by ROSALES is 6466596029 (hereinafter referred to as PTN 6029). On August 7th, 2022, John Douglas OGLESBY was arrested in

the Brown Field Border Patrol's area of responsibility attempting to smuggle five (5) undocumented aliens. OGLESBY is a known associate of both ROSALES and ALEJO. The case was accepted for prosecution and is pending adjudication. A warrant for search was executed on the phone belonging to OGLESBY. Discovered within the phone is a plethora of evidence showing OGLESBY to be conspiring with both ALEJO and ROSALES (using PTN 3739) to smuggle undocumented aliens into the United States. Within the contact list in OGLESBY's phone is the number PTN 6029 with the contact names of both "Jr" and "Primo".

24. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that ROSALES conducts most if not all of his criminal activities through the use of cellular telephones. I also know that ROSALES has been associated to at least four cellular numbers and that those cellular numbers have been used to conduct crimes in violation of Title 8 United States Code 1324 alien smuggling. I believe that the **Target Devices** seized from ROSALES at the time of his arrest by the Riverside Sheriff's Department are two phones utilizing at least two of the cellular numbers documented earlier as being used by ROSALES to conduct his criminal enterprise. I also know that cellular telephones can use multiple numbers on one cellular device therefore it is possible that the **Target Devices** seized from ROSALES could utilize all four cited cellular numbers.

25. I know that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information is stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that ROSALES used the **Target Devices** to communicate with others to further and expand his criminal activities. I know that ROSALES employs a crew of foot guides and to plan smuggling routes, times and pickups as well as communicate with the sponsors of the smuggled aliens he brings to the United

States for payment he requires a cellular phone to coordinate these events. Because the **Target Devices** were seized at the time of ROSALES' arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. Accordingly, I request permission to search the **Target Devices** for data beginning on **November 25, 2021, through February 20, 2023**.

## METHODOLOGY

26.  It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

27. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

28. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

29. Law enforcement has not previously attempted to obtain the evidence sought by these warrants.

## CONCLUSION

30. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of an alien smuggling violation of Title 8, United States Code, Section 1324.

31. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A-1 and A-2, seize the items listed in Attachment B-1 & B-2 using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
John E. Costello
Border Patrol Agent-Intelligence

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 28th day of February 2023.

HON. KAREN S. CRAWFORD
United States Magistrate Judge